UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN KASPER,

    Plaintiff,

v.

NFHS NETWORK, LLC,

    Defendant.

Case No. 24-cv-04682-JD

**ORDER RE ARBITRATION**

In this putative class action, named plaintiff Steven Kasper alleges that defendant NFHS Network, LLC unlawfully disclosed information about his personal video-viewing habits and activities to third parties including Meta Platforms Inc. He says that these disclosures violated the Video Privacy Protection Act (VPPA), 18 U.S.C. §§ 2710 et seq., Cal. Civil Code § 1799.3, and California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq. Dkt. No. 1-4 ¶¶ 85-113.

Defendant NFHS Network, LLC (NFHS) has moved to compel arbitration of Kasper's claims. Dkt. No. 16. The motion is granted and the case is stayed and ordered to arbitration.

**DISCUSSION**

An arbitration agreement was initially formed between NFHS and Kasper in 2016, when Kasper created his free account on NFHS's website. NFHS has carried its burden of demonstrating that it provided "reasonably conspicuous notice of" its Terms of Use (TOU), and that Kasper "[took] some action, such as clicking a button or checking a box, that unambiguously manifest[ed] his . . . assent to those terms," *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (citation omitted). When Kasper first signed up for his NFHS Network Account, he was required to click on a box that stated, "I accept the Terms and Conditions," where

1    the phrase "Terms and Conditions" was hyperlinked to the 2014 Terms of Use. Dkt. No. 16-7
2    (Huddle Decl.) ¶¶ 10, 15, 28; *id*., Ex. 1 (Dkt. No. 16-8); *id*., Ex. 6 (Dkt. No. 16-13). The 2014
3    TOU contained an arbitration clause in which the parties agreed to submit "any controversy or
4    claim arising out of relating to this agreement, the Service, or any alleged breach of this
5    agreement, or any other controversy or claim between the parties, solely and exclusively to
6    arbitration administered by the American Arbitration Association ('AAA') in accordance with its
7    Commercial Arbitration Rules." Dkt. No. 16-8 at ECF p. 10.[1] That NFHS prompted users to click
8    a box saying "I accept" rather than "I agree" makes no difference for the purposes of contract
9    formation, and Kasper's argument to the contrary borders on the disingenuous. Dkt. No. 22 at 4-5.
10   So too for Kasper's suggestion that it was not "possible to identify" who the "parties" to the
11   arbitration agreement were. *Id*. at 5. Immediately following the dispute resolution clause, the
12   TOU referenced "You," *i.e.*, the user, and "Us," *i.e.*, "NFHS Network, LLC." Dkt. No. 16-8 at
13   ECF p. 11.

14   There was no need for a new arbitration agreement to be formed each time Kasper initiated
15   a new period of subscription to NFHS's paid service. The TOU that Kasper accepted when he
16   created a free account with NFHS stated that the TOU "set forth the terms and conditions that
17   apply to use of the NFHS Network site and service ('Service')," and that "[b]y using, visiting, or
18   browsing the Service . . . , you accept and agree to be bound by these Terms." Dkt. No. 16-8 at
19   ECF p. 2. Although the TOU specified that "[a]ccess to premium content on the Service may
20   require a paid NFHS Network subscription," the TOU also stated that "[t]he NFHS Network
21   provides video events and other digital content to visitors to our website and other user
22   interfaces." *Id*. at ECF p. 3. Put plainly, the TOU governed Kasper's use of NFHS's website
23   whether he had an active paid subscription or not. Even in the periods during which his paid
24   subscription had lapsed, he was an NFHS Network account holder and remained subject to the
25   TOU he clicked to accept when he first created his free account in 2016. Kasper does not contend

---

[1] The TOU contain a Georgia choice-of-law provision, *see* Dkt. No. 16-8 at ECF p. 11, but both sides agree that the Court can apply either California or Georgia law to the contract formation issue because the laws of the two states do not materially differ on that issue. *See* Dkt. No. 16 at 11; Dkt. No. 22 at 3 n.1.

2

1    otherwise, and the record reflects only that his NFHS account was created once in 2016, and that

2    account appears to have remained active at all relevant times.

3          The 2014 TOU which Kasper accepted at account formation also stated that the "Terms are

4    subject to change on occasion, so you should review these Terms from time to time, as you will be

5    deemed to accept such changes through your continued use of the Service."  Huddle Decl. at ECF

6    p. 2.  The record establishes that the TOU were updated in 2018, 2022, and 2024.  Dkt. No. 16-7

7    ¶¶ 11-13.  Kasper accepted each of these versions by using NFHS's service and specifically

8    having active paid subscriptions during these time periods:  September 2016 to April 2017, August

9    2017 to January 2018, November 2018 to December 2018, March 2021 to October 2021, and

10   February 2023 to May 2024.  *Id.* ¶ 29.

11         The 2018, 2022, and 2024 versions of the TOU all contained a materially similar

12   arbitration clause, and all expressly referenced the AAA Commercial Arbitration Rules.  *See* Dkt.

13   No. 16-9 at ECF pp. 9-11; Dkt. No. 16-11 at ECF pp. 17-18; Dkt. No. 16-12 at ECF pp. 16-20.[2]

14   As Kasper acknowledges, "incorporation of the AAA rules constitutes clear and unmistakable

15   evidence that [the] contracting parties agreed to arbitrate arbitrability."  *Brennan v. Opus Bank*,

16   796 F.3d 1125, 1130 (9th Cir. 2015); *see* Dkt. No. 22 at 10-11 (referencing the "AAA Commercial

17   Rules, to which [NFHS's] TOU refer and which actually contain the applicable delegation

18   provisions").  This is equally true for consumers and other purportedly "unsophisticated" parties.

19   *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2-3 (N.D. Cal. Oct. 11,

20   2017); *see also Cruz v. Cambridge Real Estate Servs., Inc.*, No. 22-cv-06075-JD, 2023 WL

21   3134198, at *2 (N.D. Cal. Apr. 27, 2023).

22         Kasper did not validly opt out of his arbitration agreement with NFHS.  He points to the

23   fact that he filed a complaint in the Central District of California on February 23, 2024, and in

24   state court on June 30, 2024.  Dkt. No. 22 at 2.  But the 2024 TOU, which became effective on

25   February 14, 2024, stated that "[y]ou may opt out of this dispute resolution provision (except for

26   the jury trial waiver above) by notifying NFHS Network of that intent during the Opt-Out Period

---

[2] The 2024 TOU specified that for claims of less than $75,000, the AAA's Supplementary Procedures for Consumer-Related Disputes would apply.  Dkt. No. 16-12 at ECF p. 17.

3

stating that you are opting out of this dispute resolution provision," at NFHS Network's address in Atlanta, Georgia. Dkt. No. 16-12 at p. 19. The complaint filings do not fit the plain language requirements for opting out. And Kasper's purported opt-out letter to NFHS dated September 11, 2024, *see* Dkt. No. 22 at 2-3, is not a basis for denying NFHS's motion to compel arbitration which was filed on August 23, 2024. Dkt. No. 16.[3]

Kasper's rather half-hearted suggestion that the prospective-waiver doctrine "may 'perhaps'" apply is no basis for declining to enforce the parties' arbitration agreement here. Dkt. No. 22 at 8-9. Kasper's arguments that the delegation clause is unconscionable are similarly without merit. He says, for example, that the delegation clause is "non-mutual," *id*. at 11-12, but this argument is inconsistent with the TOU as the delegation clause applies to Kasper and NFHS equally. Because Kasper's challenges to the delegation clause fail, the remainder of Kasper's unconscionability arguments about the arbitration agreement as a whole are for the arbitrator to decide.

## CONCLUSION

Kasper's claims are ordered to arbitration consistent with the terms of his arbitration agreement with NFHS. This action will be stayed pending the completion of the arbitration.

**IT IS SO ORDERED.**

Dated: November 20, 2024

JAMES DONATO
United States District Judge

---

[3] In light of the 2024 TOU's failure to define the "Opt-Out Period," it may be that Kasper has an argument that he has validly opted out of arbitration for any disputes arising after September 11, 2024. But he has not done so for disputes arising prior to that date, which are the subject of NFHS's present motion to compel.